[Cite as *In re K.E.M.*, 2012-Ohio-5652.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE ADOPTION OF K.E.M.

C.A. No.    26307

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    2010 AD 00126

DECISION AND JOURNAL ENTRY

Dated: December 5, 2012

MOORE, Judge.

{¶1}    Petitioners-Appellants, Jennifer and Scott Majcher ("the Majchers"), appeal from the January 23, 2012 judgment entry of the Summit County Court of Common Pleas, Probate Division.  For the following reasons, we affirm.

I.

{¶2}    On October 14, 2006, K.E.M. was born to Respondent-Appellee, La'Keyshia Denise Hatcher, and Ronald Edward Nesby.  In December of 2007, Ms. Hatcher needed help caring for K.E.M. because she was homeless and unemployed, and Mr. Nesby was incarcerated.  Through the assistance of a woman from Ms. Hatcher's church, K.E.M. went to live with the Majchers.

{¶3}    The Majchers filed a complaint for legal custody of K.E.M. which was granted by the juvenile court in 2008.

**{¶4}** On July 29, 2010, the Majchers filed a petition in probate court to adopt K.E.M. In their petition, the Majchers alleged that, pursuant to R.C. 3107.07(A), Ms. Hatcher's and Mr. Nesby's consent was not required to grant the adoption because, without justifiable cause, they failed to (1) provide more than de minimus contact with K.E.M. for a period of at least one year immediately preceding the filing of the adoption petition or the placement of K.E.M. in their home, or (2) provide the maintenance and support of K.E.M. as required by law or judicial decree for a period of at least one year immediately preceding the filing of the adoption petition or the placement of K.E.M. in their home.

**{¶5}** Ms. Hatcher objected and a hearing was set to determine whether her consent was necessary in order for K.E.M.'s adoption to proceed.

**{¶6}** In her decision, the magistrate found that Ms. Hatcher "has had no contact with [K.E.M.] since shortly after the court hearing in June 2008." However, based upon the Supreme Court of Ohio's decision, *In re Adoption of J.A.S.*, 126 Ohio St.3d 145, 2010-Ohio-3270, the magistrate dismissed the petition because it did not comply with the requirements set forth in R.C. 5103.16(D) for independently placing a child for adoption when no public agency, certified institution or association, or foreign custodian is involved. The magistrate noted that R.C. 5103.16 does not apply in all private adoptions because it makes exceptions for stepparents, grandparents, and guardians, but not for legal custodians. As such, the magistrate concluded that, pursuant to R.C. 5103.16(D)(1), Ms. Hatcher's consent was required in order for the adoption to proceed because "[t]he juvenile court's order of legal custody is not a placement for adoption."

**{¶7}** The Majchers timely objected to the magistrate's decision. In their objections, the Majchers argued that the magistrate's reliance upon *J.A.S.* is misplaced because, unlike the

appellants in *J.A.S.*, they were not trying to avoid the pre-adoption placement requirements set forth in R.C. 5103.16(D). Rather, the Majchers asserted that R.C. 5106.16(D) does not require the consent of the biological parents if an exception in R.C. 3107.07 applies.

{¶8} On January 23, 2012, the trial court overruled their objections and adopted the magistrate's decision, stating:

\* \* \*

In [*J.A.S.*], the Ohio Supreme Court determined that a custody placement is not a placement for adoption in the same way that a more definitive adoption placement is made. Therefore, R.C. 5103.16 does not create an exception to its terms for *legal custodians*, meaning, in a practical sense, that parental consent to the adoption, or a lack of objection to the adoption, must be gained by the applicants in order for the Probate Court to approve the application.

\* \* \*

[*J.A.S.*] counsels that the statute is intended to be read narrowly, to permit adoptions only where adoption placements have been intentionally made, or, in the alternative, where consents have been given (or the lack of objections following service may be demonstrated). [*J.A.S.*] suggests that termination of parental rights is required, likely at the time of the granting of legal custody, in order for children in legal custody to be eligible for adoption.

\* \* \*

(Emphasis added.)

{¶9} The Majchers timely appealed and set forth one assignment of error for our consideration.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED TO THE PREJUDICE OF [THE MAJCHERS] BY DISMISSING THE PETITION FOR ADOPTION WHEN IT MISAPPLIED THE LAW IN ITS APPLICATION OF [J.A.S.] AND R.C. 3107.07 AND R.C. 5103.16(D).

**{¶10}** In their sole assignment of error, the Majchers argue that the trial court misapplied the law as stated in *J.A.S.*, R.C. 3107.07, and R.C. 5103.16(D). Specifically, the Majchers argue that Ms. Hatcher's consent to K.E.M.'s adoption was not necessary due to the exception set forth in R.C. 3107.07(A).

**{¶11}** "Issues of statutory interpretation present a question of law; thus, we do not give deference to the trial court's determination in such matters." *State v. Cruise*, 185 Ohio App.3d 230, 2009-Ohio-6795, ¶ 5, citing *Donnelly v. Kashnier,* 9th Dist. No. 02CA0051-M, 2003-Ohio-639, ¶ 26, citing *State v. Wheeling & Lake Erie Ry. Co.*, 9th Dist. No 3214-M, 2002 WL 389056, *3 (Mar. 13, 2002). "This court reviews a trial court's interpretation and application of a statute under a de novo standard." *Cruise* at ¶ 5. "[W]here the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the statute nor subtractions therefrom." *Id.*, quoting *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, ¶ 14. "If it is ambiguous, we must then interpret the statute to determine the General Assembly's intent. If it is not ambiguous, then we need not interpret it; we must simply apply it." *Cruise* at ¶ 5, quoting *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, ¶ 13.

**{¶12}** R.C. 5103.16 sets forth the procedure for placing a child for adoption where no public agency, certified institution or association, or foreign custodian is involved. *See J.A.S.*, at ¶ 7. R.C. 5103.16(D) states, in relevant part:

> No child shall be placed or received for adoption or with the intent to adopt unless placement is made by a public children services agency, an institution or association that is certified by the department of job and family services * * * or custodians in another state or foreign country, or unless *all* of the following criteria are met:
>
> (1) Prior to the placement and receiving of the child, the parent or parents of the child personally have applied to, and appeared before, the probate court of the

county in which the parent or parents reside, or in which the person seeking to adopt the child resides, for approval of the proposed placement specified in the application and have signed and filed with the court a written statement showing that the parent or parents are aware of their right to contest the decree of adoption subject to the limitations of section 3107.16 of the Revised Code;

(2) The court ordered an independent home study of the proposed placement * * * and after completion of the home study, the court determined that the proposed placement is in the best interest of the child;

(3) The court has approved of record the proposed placement.

(Emphasis added.) The former version of R.C. 5103.16(E), which was in existence at the time of the trial court's decision, also provided that "[t]his section does not apply to an adoption by *a stepparent, a grandparent, a grandparent's husband or wife, or a guardian.*" (Emphasis added.)

{¶13} Further, pursuant to R.C. 3107.06:

Unless consent is not required under section 3107.07 of the Revised Code, a petition to adopt a minor may be granted only if written consent to the adoption has been executed by all of the following:

(A) The mother of the minor;

(B) The father of the minor, if any of the following apply:

(1) The minor was conceived or born while the father was married to the mother;

(2) The minor is his child by adoption;

(3) Prior to the date the petition was filed, it was determined by a court proceeding pursuant to sections 3111.01 to 3111.18 of the Revised Code, a court proceeding in another state, an administrative proceeding pursuant to sections 3111.38 to 3111.54 of the Revised Code, or an administrative proceeding in another state that he has a parent and child relationship with the minor;

(4) He acknowledged paternity of the child and that acknowledgment has become final pursuant to section 2151.232, 3111.25, or 3111.821 of the Revised Code.

(C) The putative father of the minor;

(D) Any person or agency having permanent custody of the minor or authorized by court order to consent;

(E) The minor, if more than twelve years of age, unless the court, finding that it is in the best interest of the minor, determines that the minor's consent is not required.

Additionally, R.C. 3107.07 states, in relevant part:

Consent to adoption is not required of any of the following:

(A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

{¶14} In *J.A.S.* at ¶ 1, the Supreme Court of Ohio discussed whether R.C. 5103.16(D) requires "pre-adoptive placement where the prospective adoptive parents have been awarded legal custody of the child pursuant to a final dispositional order out of the juvenile court, and the child has been living with the prospective adoptive parents since the award of legal custody[.]" The Court observed the legislative intent of the statute to curb black-market adoptions by requiring agency supervision or court oversight. Important to the process was the aspect of having the parents of the child personally appear before the court to approve of both placement of the child and adoption. *J.A.S.* at ¶ 13. The Court concluded that because there is no exception in R.C. 5103.16(D) for adoption by legal custodians, "the procedures in R.C. 5103.16(D) for placing a child *for purposes of adoption* with a prospective adoptive parent apply even when the child has been living with the prospective adoptive parents pursuant to an award of legal custody by order of the juvenile court." (Emphasis added.) *Id*. at ¶ 2.

{¶15} Here, the Majchers obtained legal custody of K.E.M. through an order of the juvenile court. However, this order did not permanently terminate Ms. Hatcher's parental rights with regard to K.E.M. As such, the Majchers needed Ms. Hatcher's consent in order to place K.E.M. for adoption. This is so because, as the Court pointed out in *J.A.S.*, there is a difference

between a court's placement pursuant to an award of legal custody and a court's placement for prospective adoption. In the former, the parents retain residual rights, privileges and responsibilities. *J.A.S.* at ¶ 17. The purposes for prospective adoptive placement are not the same. As stated above, the procedure for independent placement of a child is governed by R.C. 5103.16(D), which mandates that parental consent is necessary, unless the prospective adoptive parent is a stepparent, grandparent, grandparent's husband or wife, or guardian. *See* former version of R.C. 5103.16(E).

{¶16} At the time the Majchers filed their adoption petition, and at the time the trial court issued its decision, R.C. 5103.16(E) did not provide an exception for legal custodians regarding the pre-adoption placement procedures set forth in R.C. 5103.16(D). As such, pursuant to R.C. 5103.16(D)(1), Ms. Hatcher's consent was necessary to properly *place* K.E.M. for adoption with the Majchers. Therefore, even if, based upon the exception in R.C. 3107.07(A), Ms. Hatcher's consent was not necessary to ultimately *grant* the petition for adoption, her consent was still necessary to *place* K.E.M. for adoption under the former version of the Revised Code.

{¶17} We note that, as of May 22, 2012, the General Assembly amended R.C. 5103.16(E) to include an exception for legal custodians to bypass the pre-adoption requirements set forth in R.C. 5103.16(D). That provision was not effective at the time the trial court made its decision.

{¶18} Accordingly, because the trial court did not err by dismissing the petition for adoption, the Majchers' sole assignment of error is overruled.

III.

**{¶19}** The judgment of the Summit County Court of Common Pleas, Probate Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
BELFANCE, J.
CONCUR.

APPEARANCES:

MARTHA HOM, Attorney at Law, for Appellant.

LAKEYSHIA HATCHER, pro se, Appellee.